## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

WILLIAM DAVID BELCHER,    )
    )
    **Petitioner,**    )
    )
**v.**    )    **CIVIL ACTION NO. 1:12-03714**
    )
ADRIAN HOKE, Warden,    )
Huttonsville Correctional Center,    )
    )
    **Respondent.**    )

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Respondent's Motion for Summary Judgment (Document No. 14.), filed on August 21, 2014, by Shannon F. Kiser, Assistant Attorney General.  By Standing Order, this matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 3.)

### PROCEDURAL HISTORY

On June 11, 2003, the Grand Jury of Mercer County, West Virginia, returned a One Count Indictment against Petitioner charging him with First Degree Murder. (Document No. 14-1, p. 2.) Subsequently, the Circuit Court appointed George Sitler and Omar Aboulhosn as defense counsel. (Document No. 1-2, p. 3.)  Petitioner retained private counsel, Wayne D. Inge, on July 31, 2003. (Id., p. 4.) On December 18, 2003, Petitioner, by counsel, filed a Motion for Bifurcation. (Id.) By Order entered on April 2, 2004, the Circuit Court granted Petitioner's motion to bifurcate the "guilt phase" and the "mercy phase" of Petitioner's trial. (Respondent's Exhibit 3.) Following a jury trial conducted on April 4 - 8, 2004, Petitioner was convicted of First Degree Murder. (Document No. 1-2, p. 5.) During the mercy phase, the jury returned a recommendation of mercy. (Id.) By Order

entered on May 17, 2004, the Circuit Court sentenced Petitioner to a life sentence with the recommendation of mercy. (Document No. 14-1, pp. 9 - 10.)

On June 7, 2004, the Circuit Court appointed Mr. Inge as appellate counsel. (Document No. 1-2, p. 6.) Petitioner, however, filed a Motion for Appointment of New Counsel on June 28, 2005, alleging a "complete breakdown in communication." (Id.) On November 18, 2004, Petitioner filed a Motion for Resentencing. (Id.) Mr. Ingle filed a Motion to Withdraw as Counsel on September 7, 2005. (Id.) On September 21, 2005, the Circuit Court granted Petitioner's Motion for Resentencing for the purpose of allowing Petitioner the opportunity to perfect his appeal. (Id., p. 7.) The Circuit Court also granted Mr. Ingle's Motion to Withdraw as Counsel and appointed the Public Defender's Office as appellate counsel. (Id.) Subsequently, the Public Defender's Office filed several motions for extensions of time and motions for resentencing for purposes of allowing Petitioner time to perfect his appeal. (Id., pp. 7 - 8.)

On December 30, 2008, Petitioner, by counsel, Gregory L. Ayers, appealed his conviction and sentence to the West Virginia Supreme Court of Appeals, raising the following assignment of error:

> Mr. Belcher was denied the effective assistance of counsel when his defense counsel failed to argue his intoxication negated premeditation and rejected the trial court's proposed jury instruction on intoxication, resulting in the jury not being instructed upon, and thus unable to consider, his only viable theory of defense.

(Document No. 14-1, pp. 15 - 36.) The West Virginia Supreme Court of Appeals refused Petitioner's appeal by Order entered on March 12, 2009. (Id., 37.)

On June 22, 2009, Petitioner, acting *pro se*, filed a Petition for Writ of *Habeas Corpus* in the Circuit Court of Mercer County. (Id., pp. 39 - 46.) Petitioner raised the following grounds for *habeas* relief:

1.      Ineffective Assistance of Counsel violates State and Federal Constitutions. Counsel failed to present any defense, failed to utilize vital evidence and testimony at trial. Counsel failed to object to the court bailiff being the investigative officer. Counsel failed to challenge for cause certain jurors, failed to request change of venire or venue. Counsel was ineffective when he allowed the trial to proceed in a bifurcated manner.

2.      The bifurcated trial proceedings were constitutionally deficient. The bifurcated manner of the proceeding denied the Petitioner of any opportunity to present evidence to the jury which would have supported his defense.

3.      The pre-trial evaluations are invalid based upon lack of information. The pre-trial psychological evaluations are inadequate and invalid because the examiners did not have available to them facts about the petitioner's previous and numerous head injuries and considered these facts in conjunction with petitioner's drug and alcohol use on the date in question.

(Id.) Subsequently, the Circuit Court appointed Derrick W. Lefler as *habeas* counsel. On January 20, 2010, Petitioner, by counsel, filed an Amended Petition for Writ of Habeas Corpus asserting the following grounds for relief:

1.      Petitioner was denied effective assistance of counsel at trial in the following respects:

(a)      Trial counsel failed to assert available defenses supported by the evidence, of unconsciousness, "automatism," diminished capacity or involuntary intoxication.

(b)      Counsel's request of a bifurcated trial deprived petitioner of his constitutional right to a unitary trial and deprived petitioner of access to his viable defense in the guilt phase of the bifurcated trial .

(Id., pp. 48 - 50.) On January 20, 2010, and February 10, 2010, Petitioner also filed a "Losh List."

(Id.) The following errors were asserted in the "Losh List":

1.      Mental competency at time of crime.
2.      Ineffective assistance of counsel.
3.      Claim of incompetence at time of offense, as opposed to time of trial.
4.      Improper communications between prosecutor or witnesses and jury.

(Id., pp. 51 - 59.)

3

On May 7, 2010, Petitioner, by counsel, Mr. Lefler, filed a "Second Amended Petition for Writ of Habeas Corpus" asserting the following grounds for relief:

1.  Petitioner was denied effective assistance of counsel in violation of his rights under the 6th and 14th Amendments of the West Virginia, United States Constitution, and Article III of the Constitution in the following respects:

    (a)  Trial counsel failed to fully investigate and assert available defenses supported by the available evidence, of unconsciousness, "automatism," diminished capacity, or voluntary intoxication.

    (b)  Counsel's request for a bifurcated trial deprived Petitioner of his constitutional right to a unitary trial and deprived petitioner access to his viable defenses in the guilt phase of the bifurcated trial.

    (c)  Counsel failed to object to the State's investigating officer acting as the court bailiff.

    (d)  Trial counsel failed to challenge for cause jurors who improperly served and should have been disqualified based upon their intimate knowledge of facts of the case and residence in proximity to the crime scene.

2.  Post trial counsel failed to develop and present factual allegations before the circuit court in support of petitioner's *pro se* motion for new trial.

3.  The bifurcated trial proceeding denied the defendant his right to a unitary trial.

4.  The court permitted the state's primary investigating officer to act as court bailiff, placing said officer in charge of the jury thus depriving petitioner of a fair and impartial trial.

(Id., pp. 63 - 70.) An omnibus hearing was conducted on May 10, 2010. (Document No. 14-3, pp. 113 - 216.) The Circuit Court heard testimony from Petitioner, Lydia Belcher (Petitioner's wife), Donald Sizemore (a private investigator), and David C. Smith (a public defender introduced as a criminal defense expert). (Id.) During the omnibus hearing, Petitioner withdrew his claim of improper communication between the jury and a witness based upon the lack of evidence. (Id., pp.

4

131-32, 211.) After addressing the merits of Petitioner's claims, the Circuit Court denied his Petition

for Writ of *Habeas Corpus* by Order entered February 15, 2011. (Document No. 1-2.)

On March 17, 2011, Petitioner, by counsel, Mr. Lefler, filed his Notice of Appeal with the

West Virginia Supreme Court of Appeals. (Document No. 14-1, pp. 72 - 83.) On June 16, 2011,

Petitioner filed his Appellant's Brief raising the following grounds:

1.      Petitioner was denied effective assistance of counsel.

     (a)      Trial counsel failed to fully investigate and assert available defenses supported by the available evidence, of unconsciousness, "automatism," diminished capacity, or voluntary intoxication;

     (b)      Trial counsel's request for a bifurcated trial deprived Petitioner of his constitutional right to a unitary trial and deprived petitioner access to his viable defenses in the guilt phase of the bifurcated trial.

2.      Failure of post-trial counsel to develop evidence for Motion for New Trial.

3.      The bifurcated trial denied Appellant's right to a unitary trial.

(Id., pp. 85 - 109.) By "Memorandum Decision" filed on March 9, 2012, the West Virginia Supreme

Court affirmed the "decision of the circuit court and fully incorporates and adopts, herein, the lower

court's detailed and well-reasoned 'Order Denying the Petitioner's Petition for Writ of Habeas

Corpus Ad Subjiciendum and Removing it from the Court's Active Docket' entered on February 15,

2011." (Document No. 1-1.)

On July 25, 2012, Petitioner, acting *pro se*,[1] filed his Petition Under 28 U.S.C. § 2254 for

Writ of Habeas Corpus By a Person in State Custody and an Application to Proceed in Forma

Pauperis. (Document Nos. 1 and 2.) Petitioner alleges the following grounds for *habeas* relief:

---

[1]   Because Petitioner is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

1.      Ineffective Assistance of Trial and Post Trial Counsel:

      a.      Trial counsel failed to utilize evidence of intoxication or present a defense of intoxication;

      b.      Trial counsel's failure to investigate defenses;

      c.      Trial counsel's request for bifurcation and the trial court's granting of the same denied the petitioner his right to a unitary trial.

2.      Bifurcation of the proceeding deprived the Petitioner of his right to assert viable defenses at trial. Counsel's request for bifurcation and the court's granting of bifurcation in this case deprived petitioner the right to present viable defenses and to a unitary trial.

(Document No. 1.) As Exhibits, Petitioner filed the following: (1) A copy of the "Memorandum Decision" as filed by the West Virginia Supreme Court of Appeals on March 9, 2012, affirming the Circuit Court's order denying Petitioner's *habeas* petition (Document No. 1-1.); and (2) A copy of the "Order Denying Habeas Corpus Petition" as filed in the Circuit Court of Mercer County on February 15, 2011 (Document No. 1-2.).

By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 3.) By Order entered on July 2, 2014, the undersigned found that Petitioner had ample funds to pay the requisite filing fee of $5.00 and denied his Application to Proceed *in Forma Pauperis*. (Document No. 8.) Petitioner paid the $5.00 filing fee on July 22, 2014. (Document No. 9.) On July 23, 2014, the undersigned ordered Respondent to file an Answer to the allegations contained in the Petition and show cause, if any, why the Writ of *Habeas Corpus* should not be granted. (Document No. 10.)

On August 21, 2014, Respondent filed his Answer, Motion for Summary Judgment, and Memorandum in Support. (Document Nos. 14 - 15.) Respondent argues as follows: (1) "Petitioner's

6

trial and post-trial counsel were not deficient" (Id., pp. 16 - 18.); and (2) "Petitioner's rights were not negatively affected by the bifurcation of his trial" (Id., p. 18.).

As Exhibits, Respondent attached the following: (1) A copy of Petitioner's Indictment as filed in State v. Blecher, Case No. 03-F-128 (Cir. Ct. Mercer Co. May 17, 2014 (Document No. 14-1, p. 2.); (2) A copy of the Motions Order as filed by the Circuit Court on March 22, 2004 (Id., pp. 4 - 5.); (3) A copy of the Order granting bifurcation as filed by the Circuit Court on April 2, 2004 (Id., p. 7.); (4) A copy of the Circuit Court's Sentencing Order dated May 17, 2004 (Id., pp. 9 - 10.); (5) A copy of the Circuit Court's Re-Sentencing Order dated September 3, 2008 (Id., pp. 12 - 13.); (6) A copy of Petitioner's "Petition for Appeal" as filed with the West Virginia Supreme Court (Id., pp. 15 - 37.); (7) A copy of the Petitioner's State *habeas* Petition as filed in the Circuit Court of Mercer County (Id., pp. 39 - 46.); (8) A copy of Petitioner's Amended *Habeas* Petition (Id., pp. 48 - 50.); (9) A copy of Petitioner's "Losh List" (Id., pp. 51 - 61.); (10) A copy of Petitioner's Second Amended *Habeas* Petition (Id., pp. 63 - 70.); (11) A copy of Petitioner's Notice of Appeal as filed with the West Virginia Supreme Court on March 17, 2011 (Id., pp. 72 - 83.); (12) A copy of Petitioner's "Appellant's Brief" as filed with the West Virginia Supreme Court on June 16, 2011 (Id., pp. 85 - 109.); (13) A copy of the transcripts from the Motions hearing conducted on March 22, 2004 (Id., pp. 111 - 209.); (14) A copy of Petitioner's trial transcripts (Id., pp. 211 - 377, Document No. 14-2, and Document No. 14-3, pp. 1 - 90.); (15) A copy of the transcripts of the "Motion for New Trial and Final Disposition" (Document No. 14-3, pp. 92 - 111.); and (16) A copy of the transcripts of Petitioner's omnibus hearing (Id., pp. 113 - 216.).

On August 25, 2014, Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Petitioner, advising him of his right to file a response to Respondent's Motion for Summary Judgment. (Document No. 16.) Petitioner, however, has not filed a Response to

Respondent's Motion for Summary Judgment.

## FACTUAL BACKGROUND

Petitioner was charged with murdering his ex-girlfriend, Bernadette McCoy, on February 27, 2003. On February 27, 2003, Petitioner allegedly drove from his residence in Welch, West Virginia, to Bernadette's residence in Princeton, West Virginia. After knocking and ringing the door bell several times, Petitioner entered Bernadette's house without permission and began throwing and knocking things over. Bernadette allegedly confronted Petitioner, and Petitioner began cussing Bernadette calling her a "bitch" and "whore." Bernadette then instructed her daughter, Courtney, to hand her the phone to call 911. Petitioner then pulled out a pistol, cocked it, and pointed it towards Bernadette stating that he came there to kill her. Petitioner then directed the gun towards Courtney and stated that he was going to kill her so Bernadette would see her die. Petitioner then took the phone from Bernadette so he could check the caller ID because he wanted to know if Bernadette had been talking to Courtney's father. After seeing Verna McCoy's name on the caller ID (Courtney's paternal grandmother), Petitioner allegedly knocked Bernadette down on to the floor and was standing over Bernadette. During this time, Courtney ran from the house and was heading for the neighbor's house when she heard gun shots being fired. Bernadette sustained eight gunshot wounds, seven of which were fatal shots to the chest.[2] Shortly after leaving the scene, Petitioner called 911 and reported that he had shot someone.

## THE APPLICABLE STANDARDS

Federal *habeas* relief is available to a State prisoner under 28 U.S.C. § 2254, only if the

---

[2] The medical examiner testified that the victim suffered 4 gun shots to the chest, three gun shoots that passed through her arms and into her chest, and one to the left index finger. (Document No. 14-1, pp. 261-62.)

prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a)(2002); See also Sargent v. Waters, 71 F.3d 158, 160 (4th Cir. 1995). Section 2254(d) provides that when the issues raised in a Section 2254 Petition were raised and considered on the merits in State Court *habeas* proceedings, federal *habeas* relief is unavailable unless the State Court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court stated that under the "contrary to" clause in § 2254(d)(1), a federal *habeas* Court may grant *habeas* relief "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13, 120 S.Ct. at1523. A federal *habeas* Court may grant relief under the "unreasonable application" clause of § 2254(d)(1) where the State Court identified the appropriate Supreme Court precedent but unreasonably applied the governing principles. Id. When a petitioner challenges the factual determination made by the State Court, "federal habeas relief is available only if the state court's decision to deny post-conviction relief was 'based on an unreasonable determination of the fact.'" 28 U.S.C. § 2254(d)(2). In reviewing a State Court's ruling on post-conviction relief, "we are mindful that 'a determination on a factual issue made by the State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.'" Tucker v. Ozmint, 350 F.3d 433, 439

(4th Cir. 2003); also see 28 U.S.C. § 2254(e).[3] On this framework, consideration should be given to Respondent's Motion for Summary Judgment.

## Motion for Summary Judgment:

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356.

---

[3] Title 28, U.S.C. Section 2254(e) provides:

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
    (A) the claim relies on –
        (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
        (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
    (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Petitioner's claims, summary judgment is appropriate.

## DISCUSSION

### 1.    Ineffective Assistance of Counsel:

The standards established by the United States Supreme Court in determining whether or not a defendant was denied his Sixth Amendment right to effective assistance of counsel are set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Ineffective assistance of counsel claims consist of mixed questions of fact and law. Id. Under the two-pronged standard, a Petitioner must show (1) that counsel's performance was so deficient that it fell below an objective standard of reasonableness, and (2) that counsel's deficiency resulted in prejudice so as to render the results of the trial unreliable. Id. at 687-91, 104 S.Ct. at 2064-66. Counsel's performance is entitled to a presumption of reasonableness and judicial review of counsel's strategic decisions is highly deferential. Id. at 689, 104 S.Ct. at 2065. Thus, a petitioner challenging his conviction on the grounds of ineffective assistance must overcome a strong presumption that the challenged actions constituted sound trial strategies. Id. The Court in Strickland cautioned against the ease in second-guessing counsel's unsuccessful assistance after the adverse conviction and sentence are entered. Id. The Fourth Circuit Court of Appeals specifically recognized that ineffective

11

assistance of counsel may not be established by a "Monday morning quarterbacking" review of counsel's choice of trial strategy. Stamper v. Muncie, 944 F.2d 170, 178 (4th Cir. 1991), cert. denied, 506 U.S. 1087 (1993). Applying this standard, and based upon all of the evidence of record, the Court will address the merits of each of Petitioner's allegations of ineffective assistance of counsel as set forth above.

**A.** ***Failure to investigate defenses and present an intoxication defense.***

In his Petition, Petitioner argues that trial counsel was ineffective in failing to investigate defenses and present intoxication as a defense. (Document No. 1., p. 6.) Petitioner appears to argue that counsel was aware of evidence indicating he was intoxicated on the day of the shooting, but counsel failed to utilize this as a defense. (Id.)

In his Motion for Summary Judgment, Respondent argues that Petitioner's claim fails under both prongs of the Strickland analysis. (Document No. 15, pp. 17 - 18.) Specifically, Respondent asserts that "there is simply no evidence that trial counsel acted deficiently" and "no proof that the aforementioned claims unfairly prejudiced his underlying trial." (Id., p. 17.) Respondent contends that "insurmountable evidence exists to show that Petitioner was [not] intoxicated to a degree of negating intent at the time of the crime." (Id., p. 18.) Respondent notes that Mr. Sizemore, a private investigator, "could only testify as to the missing liquor from the two liquor bottles obtained from Petitioner's residence well after the crime." (Id., p. 17.) Petitioner did not file a Response to Respondent's Motion.

The undersigned finds that Petitioner has failed to provide any evidence rebutting the State *habeas* Court's findings of fact and conclusions of law, which are presumptively correct. The State *habeas* Court properly applied the standards set forth in Strickland in its determination that counsel

12

was not ineffective. Decisions concerning what defenses and evidence to present are questions of strategy for trial counsel. An attorney's strategic decision is presumed reasonable and protected from second guessing under <u>Strickland</u>. Trial counsel, however, "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." <u>Strickland</u>, 466 U.S. at 691, 104 S.Ct. at 2066. When trial counsel did not make an investigation, his decision "must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." <u>Id.</u> In determining the reasonableness of counsel's actions, consideration may be given to "the defendant's own statements or actions." <u>Id.</u>

The State *habeas* Court determined that counsel was not unreasonable in failing to investigate and present defenses. Although Petitioner appears to claim that he suffered head injuries causing memory problems, Petitioner was able to testify in detail concerning his work history since the age of 14. (Document No. 14-3, pp. 176-80.) A review of the record confirms that Petitioner exhibited a good memory and was able to recall detailed facts that occurred on the day of the shooting (February 27, 2003). Petitioner was also capable of testifying as to his relationship with the victim and identify with detail such thing as gifts, cards, and trips. Thus, the undersigned finds that counsel was not unreasonable in failing to investigate "other defenses" such as his head injuries. Further, Petitioner fails to demonstrate what the result of presenting evidence or testimony of his prior head injuries would have revealed, and how it would have altered the outcome of the verdict. <u>See</u> <u>Bassette</u>, 915 F.2d at 940 - 41(an allegation that an attorney conducted an inadequate investigation does not warrant relief absent a proffer of the specific favorable evidence the investigation would have brought out). Petitioner merely speculates that presenting evidence or testimony of his head injures would have convinced the jury to reach a different verdict. Based on

13

the foregoing, the undersigned finds the above claim of ineffective assistance of counsel should be dismissed.

Next, Petitioner claims that counsel was ineffective in failing to present an intoxication defense. Petitioner claims that he was intoxication on February 27, 2003, because he had been abusing his prescription for Oxycontin and drinking liquor for several days prior to the shooting. Although Petitioner claims he was intoxicated, the undersigned has thoroughly reviewed the record and finds no evidence to support such a claim. Sergeant Hill testified that a short time after the shooting, he arrested Petitioner and transported Petitioner to jail. (Document No. 14-1, p. 282.) Sergeant Hill testified that during transport, Petitioner "kept mumbling 'What have I done'" and appeared troubled by his action. (Id., p. 284.) Sergeant Hill stated that Petitioner "made statements to the effect that he wanted me to stop the car and shoot him, . . . that he was glad his mother and father were dead because they wouldn't be very proud of what he had done." (Id.) Sergeant Beasley testified that he interviewed Petitioner on February 27, 2003, at 7:15 p.m. (Document No. 14-1, p. 332.) Although Sergeant Beasley stated that Petitioner "had a smell of alcohol on him," he testified that Petitioner did not appear to be under the influence of alcohol or a controlled substance. (Id., p. 338.) Sergeant Beasley stated Petitioner was cooperative and appeared to be "somewhat disturbed or upset" about what he had done. (Id., pp. 357-58.) Randall Justus testified that he had worked at the City Garage for 12 years and that Petitioner visited the garage once or twice everyday. (Document No. 14-2, pp. 142-43.) Mr. Justus stated that Petitioner visited the garage on February 27, 2003, at approximately 8:00 a.m. or 9:00 a.m. (Id., p. 144.) Mr. Justus explained that Petitioner stayed at the garage for approximately an hour and requested that Mr. Justus give him some parts off a truck that Mr. Justus was sending to the savage yard. (Id., pp. 144.) Mr. Justus testified that

14

Petitioner "seemed like himself . . . just seemed like, you know, just the same person . . . that he always was. Didn't seem nothing out of the ordinary." (Id., p. 145.)

During trial, Lydia Belcher also testified that she saw Petitioner on February 27, 2003, and she did not notice anything out of the ordinary. (Id., p. 120.) Lydia testified that Petitioner called her around 9:00 a.m. to let her know he was leaving home and Petitioner visited her at work around 11:00 a.m. (Id., pp. 120-21.) Lydia testified that Petitioner told her during his visit that "he was going to leave and go buy stuff to make a pot of chili, and he told me it would be ready when I got off work that evening." (Id., p. 121.) Lydia explained that Petitioner called her around 3:30 p.m. to tell her that he was running out for a few minutes, but he would be back home before she got off from work at 4:00 p.m. (Id., p. 122.) Lydia testified that Petitioner did not say anything specific that concerned her, but she just felt "uneasy" about the call. (Id., p. 123.)  Lydia explained she went home after work because she called Petitioner's house and there was no answer. (Id., p. 123.) Lydia testified that she received a collect call from Petitioner later that evening and Petitioner "told me he had shot her, but he didn't know whether he killed her . . . told me to tell our son he loved him and that he loved me and he was going to call 911 and turn himself in." (Id., p. 124.)

During trial, Petitioner gave a detailed description of his actions prior to the shooting. Specifically, Petitioner testified that he visited the City Garage on the morning of February 27, 2003, and then visited his ex-wife Lydia at her work place to invite her to dinner. (Document No. 14-2, pp. 201-02.) Petitioner testified that he then returned home and cooked chili for dinner. (Id.) Petitioner testified that he normally doesn't drink, but he did have some liquor while he was cooking the chili. (Id., p. 201.) Petitioner testified that around 3:00 p.m. or 3:30 p.m., he decided to go to the victim's home to recover some of his personal property. (Id., p. 230.) Petitioner stated that there was

15

no answer when he knocked and rung the door bell, but he entered the victim's home anyway because he knew the victim was home because her car was in the driveway. (Id., p. 233.) Petitioner testified that the victim asked him to get the gun out of his truck and when he returned to the house with the gun, the victim instructed Courtney to call 911. (Id., pp. 235.) Petitioner stated that he asked Courtney not to call 911. (Id., p. 239.) Petitioner stated that the reason the victim wanted Courtney to call 911 was because "she was going to make sure that I went to jail one way or another."[4] (Id., pp. 239-40.) Petitioner stated that the victim then instructed Courtney to leave and the victim began cussing the Petitioner and "got hateful" with him. (Id., pp. 241-42.) Petitioner stated that he pushed the victim down on the floor and told her they needed to talk. (Id.) Petitioner testified that he did not remember pulling the trigger eight times when he shot and killed the victim. (Id., pp. 242-43.)

During the omnibus hearing, Lydia testified that she and Petitioner had remarried. (Document No. 14-3, p. 145.) Lydia stated that on February 27, 2003, she talked to Petitioner that morning and he visited her at her work place around 8:00 a.m. or 9:00 a.m. (Id., p. 139.) Lydia testified that Petitioner called her around 3:00 p.m. to invite her to his house for chili. (Id., pp. 139-40.) Lydia stated that she went to Petitioner's house when she got off work around 5:00 p.m. (Id., pp. 140-41.) Lydia testified that Petitioner was not home, but she found chili and two liquor bottles in the kitchen. (Id., p. 141.) Lydia explained that she found a large, empty liquor bottle in the trash and a smaller bottle that was partially full on the kitchen table. (Id., p. 141-42.) Lydia stated that she gave the bottles to Mr. Sizemore, a private investigator. (Id., p. 142.) Lydia further testified that she was familiar with Petitioner and could recognize when he had been drinking. (Id., p. 144.) Lydia acknowledge that Petitioner appeared sober on the morning of February 27, 2003, and that he didn't

---

[4] Petitioner had a domestic violence order against him at the time of the shooting.

sound any different when she talked to him at 3:00 p.m. (Id., pp. 147-48.) Lydia testified that Petitioner sounded "bewildered" when he called her following the shooting. (Id., p. 150.)

Donald Sizemore, a private investigator, testified during the omnibus hearing that he was contacted by Petitioner's initial counsel to investigate the issue of possible intoxication. (Id., pp. 153-54.) Mr. Sizemore testified that he recovered two liquor bottles from Lydia on March 7, 2003. (Id., p. 158.) Mr. Sizemore described the pint bottle of Canadian Mist as being approximately 3/4 full and a 750 millimeter bottle of Canadian Mist as being empty. (Id., p. 158-59.) Mr. Sizemore acknowledged that he had no idea how or when the bottles came to be empty. (Id., p. 161.)

During the omnibus hearing, Petitioner testified that on the morning of February 27, 2003, he went to the City Garage, the grocery store, and the liquor store. (Id., pp. 169-70.) Petitioner stated that he was drinking liquor and exceeding his prescribed dose of Oxycontin on February 27, 2003. (Id., pp. 168-72.) Petitioner explained that he was routinely exceeding his prescribed dose of Oxycontin and drinking liquor. (Id., pp. 166-67.) Petitioner stated that the last thing he remembers about February 27, 2003, is when he called Lydia to invite her up for dinner. (Id., p. 173.)

David Smith testified as an expert in criminal defense during the omnibus hearing. (Document No. 14-3, pp. 197.) Although Mr. Smith testified that intoxication may have been a possible defense, Mr. Smith stated that "a showing that your client is drunk is never particularly helpful." (Id., pp. 200-02.) Mr. Smith further acknowledged that there was no reasonable probability that the results of the proceedings would have been different even if counsel would have presented an intoxication defense. (Id., p. 210.)

Based on the foregoing, the Court finds that Petitioner has failed to provide any evidence rebutting the State *habeas* Court's findings of fact and conclusions of law, which are presumptively

correct. The State *habeas* Court determined that Petitioner's claim of ineffective assistance of counsel based upon counsel's failure to present an intoxication defense was without merit. The State *habeas* Court properly applied the standards set forth in Strickland in its determination that counsel was not ineffective. A review of the record confirms that the State *habeas* Court's determination of the facts was not unreasonable in light of the evidence presented in the State Court proceedings. Trial counsel was proceeding upon the defense that Petitioner was a law-abiding citizen with a good reputation in the community who killed the victim in a heat of passion after being provoked by the victim. The presentment of an intoxication defense would have contradicted the foregoing defense. Clearly, any testimony that Petitioner routinely abused his prescription for Oxycontin in combination with drinking liquor would have defeated Petitioner's claim that he was a law aiding citizen. Counsel was attempting to obtain a voluntary manslaughter conviction based upon heat of passion, instead of a second degree murder conviction based upon intoxication. Furthermore, decisions concerning what defenses and evidence to present are questions of strategy for trial counsel. An attorney's strategic decision is presumed reasonable and protected from second guessing under Strickland. Finally, there is no indication that the results of Petitioner's trial would have been different had counsel presented an intoxication defense. Trial testimony reveals that Petitioner did not appear to be intoxicated on February 27, 2003. Although Petitioner now claims he was so intoxicated that he was incapable of forming intent to kill the victim, the record reveals that Petitioner was capable of presenting a fairly detailed account of his actions on the day of the shooting. Petitioner was also capable of making a collect call to Lydia following the shooting. Finally, there was no testimony by police officers that Petitioner appeared to be intoxicated following the shooting. Based on the foregoing, the undersigned finds that the above claim of

ineffective assistance of counsel should be dismissed.

       **B.**    ***Request for bifurcation.***

In his Petition, Petitioner argues that trial counsel was ineffective in requesting bifurcation of his trial into a guilt phase and a mercy phase. (Document No. 1., p. 6.) In his Motion for Summary Judgment, Respondent argues that Petitioner's claim fails under both prongs of the Strickland analysis. (Document No. 15, p. 17.) First, Respondent contends that Petitioner fails to allege how counsel was deficient. (Id.) Second, Respondent asserts that Petitioner "cannot show that he has been harmed by the bifurcation of his trial into a guilt phase and a mercy phase." (Id., p. 18.) Respondent notes that "Petitioner was granted mercy after proffering evidence during the mercy phase that would have been rendered inadmissible during the guilt phase." (Id.) Petitioner failed to file a Response to Respondent's Motion.

The undersigned has thoroughly reviewed the record and cannot find that the State *habeas* court's determination that Petitioner was not prejudiced by counsel's decision to bifurcate was contrary to a reasonable application of federal law, or based on an unreasonable determination of facts. During the mercy phase, counsel presented additional testimony by Petitioner concerning his work history, physical and mental health, lack of criminal history, and use of Oxycontin. (Document No. 14-3, pp. 64 - 73.) The record contains no indication that Petitioner was prejudiced by trial counsel's decision to bifurcate. During the mercy phase of the proceeding, the jury recommended mercy. Petitioner, therefore, was clearly not prejudiced by the bifurcation. Accordingly, the undersigned finds that Petitioner's above claim is without merit.

**2.**    <u>**Claim that the Trial Court erred by allowing bifurcation**</u>:

In his Petition, Petitioner argues that the trial court's granting of bifurcation deprived

Petitioner of the right to present viable defenses and to a unitary trial. (Document No. 1, p. 6.) Petitioner appears to argue that the Trial Court erred by failing to require trial counsel to show that Petitioner would be prejudiced by a unitary trial as is required by the test set forth in <u>State v. LaRock</u>, 196 W.Va. 294, 470 S.E.2d 613 (1996).[5] In his Motion for Summary Judgment, Respondent argues Petitioner's above claim should be dismissed because Petitioner is "seeking federal review and application of clearly established State law while claiming no error of federal constitutional rights." (Document No. 15, p. 18.) Petitioner failed to file a Response to Respondent's Motion.

Relief under Section 2254 is available to State prisoners in "custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254 (2002). Violations of State law and procedure that do not implicate specific federal constitutional provisions are not cognizable in *habeas* review. See <u>Estelle v. McGuire</u>, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)("[I]t is not the province of a federal *habeas* court to reexamine state-court determinations on state-law questions. In conducting *habeas* review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); <u>Fisher v. Angelone</u>, 163 F.3d 835, 854 (4th Cir. 1998). To the extent Petitioner is claiming that the trial court improperly allowed bifurcation under West Virginia law, his claim is not cognizable in federal *habeas* corpus. <u>Wright</u>

---

[5] Under West Virginia law, "[a] trial court has discretionary authority to bifurcate a trial and sentencing in any case where a jury is required to make a finding as to mercy." *LaRock*, 196 W.Va. at 299, 470 S.E.2d at 618. The West Virginia Supreme Court has stated that "[a]lthough it virtually is impossible to outline all factors that should be considered by the trial court, the court should consider when a motion for bifurcation is made: (a) whether limiting instructions to the jury would be effective; (b) whether a party desires to introduce evidence solely for sentencing purposes but not on the merits; (c) whether evidence would be admissible on sentencing but would not be admissible on the merits or vice versa; (d) whether either party can demonstrate unfair prejudice or disadvantage by bifurcation; (e) whether a unitary trial would cause the parties to forego introducing relevant evidence for sentencing purposes; and (f) whether bifurcation unreasonably would lengthen the trial." *Id.*

v. Angelone, 151 F.3d 151 (4th Cir. 1998)(citing Wills v. Egeler, 532 F.2d 1058, 1059 (6th Cir. 1976)(stating that the "[d]etermination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary")); also see Estelle, 502 U.S. at 67 - 68, 112 S.Ct. at 475 (stating that "[i]t is not the province of a federal habeas corpus court to reexamine state court determinations on state-law questions.")

To the extent Petitioner claims that the Trial Court's granting of bifurcation deprived Petitioner of the right to present viable defenses and to a unitary trial, Petitioner's claim should be dismissed. *Habeas* petitions must meet heightened pleading requirements. McFarland v. Scott, 512 U.S. 849, 114 S.Ct. 2568, 129 L.Ed.2d 66 (1994). The petition must "set forth in summary form the facts supporting each of the grounds thus specified." Rule 2(c) of the Rules Governing Section 2254 Proceedings in the United States District Courts. "[N]otice pleading is not sufficient [in federal *habeas corpus*], for the petition is expected to state facts that point to a 'real possibility of constitutional error.'" Blackledge v. Allison, 431 U.S. 63, 75 n. 7, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); also see Bernier v. Moore, 441 F.2d 395, 396 (1st Cir. 1971)(stating that "[t]he fundamental purpose of *habeas corpus* would be undermined if the writ were prostituted by holding it out as available upon mere 'notice' without any showing of entitlement.") The petitioner must come forward with evidence that the claim has merit. Nickerson v. Lee, 971 F.2d 1125 (4th Cir. 1992), cert. denied, 507 U.S. 923, 113 S.Ct. 1289, 122 L.Ed.2d 681 (1993), *abrogation on other grounds recognized*, Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999). Unsupported, conclusory allegations do not entitle a petitioner to relief. See Beasley v. Halland, 649 F.Supp. 561, 566 (S.D.W.Va. 1986)(finding that "[m]ere conclusory charges of perjury and the knowing use of perjured testimony is insufficient to warrant a hearing or habeas relief"); Jones v. Gomez, 66 F.3d 199, 204 - 05 (9th Cir.

1995)(stating that "[c]onclusory allegations which are not supported by a statement of specific facts do want warrant habeas relief"). The undersigned finds that Petitioner's above claim is improperly pled. Petitioner merely concludes that the Trial Court denied him the right to present viable defenses and a unitary trial. Petitioner, however, fails to set forth any analysis or explanation as to what "viable defenses" he was unable to present or how bifurcation violated his constitutional rights. Accordingly, Respondent is entitled to summary judgment on this claim.

### PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Respondent's Motion for Summary Judgment (Document No. 14.), **DISMISS** Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* By a Person in State Custody (Document No. 1.), and remove this matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.

Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same Petitioner, who is acting *pro se*, and to counsel of record.

Dated: January 5, 2015.

R. Clarke VanDervort
United States Magistrate Judge